KIMBALL, C.J.
| ,We granted certiorari in this case to determine whether the court of appeal erred in ordering the return of $144,320 to Tina Beers after finding the State did not establish probable cause for forfeiture of the currency under the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989 (the Act), La. R.S. 40:2601 et seq. For the reasons stated herein, we find the State proved there was probable cause for the forfeiture. We also find the court of appeal erred by reversing the decision of the district court to strike Tina Beers’ claim to the money. We therefore reverse the decision of the court of appeal and reinstate the decision of the district court.
FACTS AND PROCEDURAL HISTORY
On January 10, 2009, State Trooper Du-puis was patrolling the west-bound lanes of Interstate 10 in St. Martin Parish when he stopped Tina Beers (“Beers”) for an unknown traffic violation. Beers was driving a 1995 Plymouth Voyager (a minivan) with a North Carolina license plate. She was accompanied by her three children, who were between ages two and seven. Upon being stopped, Beers appeared nervous. Trooper Dupuis requested permission to search Beers’ vehicle, and she consented. During the search, Trooper Dupuis discovered several bundles of United States currency stored in a floor compartment of the vehicle.
| ¡After discovering the large amount of currency, Trooper Dupuis transported Beers to the State Police regional office in Lafayette, Louisiana. State Trooper Jackson, a regional narcotics agent, took custody of Beers’ vehicle and assisted Trooper Dupuis in removing nine plastic shrink-wrapped bundles of money from the floor compartment. Trooper Jackson placed the bundles in what he called a “neutral room.” He then brought in a trained drug-detecting police dog to sniff the room, and the dog alerted to the bundles of currency, which according to Trooper Mire indicates the presence of “illegal narcotics.” No further testing was performed on the money. The currency was counted and valued at $144,320, consisting of 5, 10, 20, 50, and 100-dollar bills. In subsequent requests for admissions, the State admitted no narcotics were found in Beers’ vehicle and the State did not charge her with a crime related to this incident.
State Trooper Mire interviewed Beers in a separate room of the regional office after she was advised of her Miranda rights and waived them. Beers explained she and her children were traveling from North Carolina to Houston, Texas, to visit her mother-in-law, who was recently hospitalized. Beers, however, could not recall *697 the name of the hospital. Beers stated the money was not hers and she was unaware of how it became placed in her vehicle. She explained she had no means of accumulating such funds and had never received any inheritance or other large sum of money. Beers claimed to have been working at a television repair shop for approximately eighteen months, earning $800 per week in cash, which she said she did not disclose on her tax documents. She then signed a Notice of Disclaimer of Ownership, again stating she did not own the money and did not know how it became placed in her vehicle. The Notice of Disclaimer of Ownership also states Beers waived “any right to notice of seizure or intention to seek forfeiture” of the money. Before Beers was released, Trooper Mire served her with a Notice of Pending Forfeiture.
lüThree days later, on January 13, the State filed an application for Warrant of Seizure for Forfeiture pursuant to La. R.S. 40:2606.[1] The State included a Letter of Designation authorizing Louisiana State Police to seize and hold the money and the Notice of Pending Forfeiture that Trooper Mire previously served upon Tina Beers. The State also submitted the affidavit of Trooper Mire, which set forth the aforementioned facts relating to the stop and interview of Tina Beers on January 10, 2009. The affidavit shows Trooper Mire became a Louisiana State Trooper in 2001 and was assigned to the West District Narcotics Section in January 2005, after receiving instruction on investigating illegal narcotic trafficking. He noted his experience and training taught him drug traffickers frequently carry large amounts of cash and the cash they carry often contains narcotics residue. Trooper Mire testified trained drug-detection dogs like the one used here generally alert to the scent of narcotic residue on currency derived from drug trafficking. He also testified Interstate 10 is a known corridor for drug trafficking. According to Trooper Mire, narcotics are typically transported from areas west of St. Martin Parish eastward and currency derived from drug transactions is typically transported from areas east of St. Martin Parish westward. Judge Paul deMahy of the 16th Judicial District Court signed the warrant on January 15, 2009.
On April 2, 2009, Tina Beers and Brittany Beers, Tina’s sister (collectively, “the claimants”), filed a “Motion for Probable Cause Hearing Regarding Pending Notice of Forfeiture and for Release of Seized Property” pursuant to La. R.S. 40:2611.[2] In the motion, the claimants argue they *698 were not served with the district | attorney’s notice of intent to seize the currency for forfeiture. The claimants also contend the property is not subject to forfeiture and alternatively, they “specifically urge each of the factors necessary to assert an exemption per La. R.S. 40:2605.”[3] They do not, however, allege any facts supporting those assertions. They claim the money is accumulated savings as evidenced by the attached affidavits, which are “styled as a Request for Stipulations of Exemption.”
The claimants filed identical affidavits, each stating the affiant owns an undivided 100% interest in the money. Both contend the money comprised |Baccumulated savings, partially earned from the proceeds of vehicle sales “as evidenced by the attached documentation.” Brittany attached no supporting documentation to her affidavit. Tina attached a 2007 tax return, showing earned wages of $4,314.50 for the previous year. Tina also attached tax receipts from the Chatham County Tax Department in North Carolina. The tax receipts show a total assessed value on six vehicles of $18,530.[4]
In response, the State filed a “Motion to Strike Claim,” alleging the claim of Tina Beers fails to satisfy the requirements of La. R.S. 40:2610, which governs the filing of claims against property pending forfeiture.[5] The motion requested the court to *699 strike the claim of Tina Beers and to subsequently allow the State to proceed with application for forfeiture because no claims were timely filed.[6]
All of the motions were scheduled to be heard on April 8, 2009, before Judge Co-meaux of the 16th Judicial District Court. After taking the matter under advisement, the district court ruled the service of the Notice of Pending Forfeiture |fion Tina Beers was ineffective because Trooper Mire was not authorized to effectuate service on January 10, 2009, when he personally served Tina Beers. Although Trooper Mire signed the Notice of Pending Forfeiture as a member of the designated seizing agency, the State had not filed its letter of designation with the trial court until January 13, 2009, three days after service was made.[7] The court of appeal reversed and remanded, finding Tina Beers waived her right to notice of forfeiture by signing the Notice of Disclaimer of Ownership, which provides, “[I] am waiving any right to notice of seizure or intention to seek forfeiture of this currency or property,” and further showed she had notice and knowledge of the forfeiture proceedings by filing a claim of ownership. State v. $144,320.00, 09-954 (La.App. 3 Cir. 2/3/10), 29 So.3d 1266 (Beers I).[8] This Court denied writs. 10-0821 (La.6/18/10), 38 So.3d 324.[9]
On remand, the district court denied the claimants’ Motion for Probable Cause Hearing, finding the hearing was unavailable because there had been a “previous judicial determination of probable cause” when Judge deMahy granted the State’s Application for Warrant of Seizure for Forfeiture. See La. R.S. 40:2611(C). In its judgment dated January 6, 2011, the district court found probable cause existed *700 for the seizure and forfeiture of the $144,320.
The district court also granted the State’s Motion to Strike Claim, striking the claims made by both claimants for failing to satisfy La. R.S. 40:2610(B). The court found Brittany provided no evidence to support her allegation that the money |7was her accumulated savings. Although Tina attached some supporting documentation to her affidavit, the court noted the total amount of savings Tina claimed would not amount to even one-quarter of the money seized from her vehicle. In summary, the district court stated:
[The affidavit] doesn’t set forth the date, identity of the transfer, or the circumstances of the claimant’s acquisition of the interest in the property in either documentation attached to it or in the affidavit itself. It just says ... I’ve accumulated it through savings. It doesn’t give any specificity that’s required by the statute. Therefore, I’m going to grant the Motion to Strike.
The claimants appealed, raising three assignments of error. They argued (1) the district court erred in finding probable cause existed for the seizure, (2) the district court erred by striking Brittany’s claim to the money, and (3) the district court erred in not granting Brittany’s exceptions for lack of notice.
The Third Circuit Court of Appeal reversed the ruling of the district court and found no probable cause for forfeiture existed in this case. The court reasoned the State bears the initial burden of showing probable cause for forfeiture in a forfeiture proceeding. State v. Gauthier, 02-1227, p. 3 (La.App. 3 Cir. 4/17/03), 854 So.2d 910, 912. While the court noted there were “facts which provide a suspicion that the cash could be of less than honest origins,” it found “no credible evidence whatsoever that the currency was related in any way to any drug transaction or activity.” The court noted Tina Beers was never charged for a crime relating to the January 10, 2009, stop and no narcotics-related evidence was found in her vehicle. In addition, the State did not provide any evidence showing Tina Beers had a history associated with drug activity. The court of appeal found probable cause was not established by the drug dog alerting to the scent of narcotics on the currency because of “the prevalence of currency in circulation which would contain such a strike.” [10]
|sThe court of appeal further ruled the money must be returned to Tina Beers. While the court of appeal found the district court did not err in striking Brittany Beers’ claim because she provided no evidence to show any connection to the money, the court of appeal reversed the district court’s ruling striking Tina Beers’ claim. The court of appeal explained Tina Beers’ affidavit showed income equal to approximately one quarter of the seized money, which was much larger than the showing Brittany made and, moreover, the money was taken directly from Tina Beers’ possession. Therefore, the court of appeal found all of the money should be returned to Tina Beers.
Judge Genovese concurred, agreeing there was no probable cause for the forfeiture. However, Judge Genovese did not think the money should be returned to Tina Beers because she had not established she was the rightful owner.
The State filed an application for certio-rari with this Court, asserting the court of appeal erred in finding no probable cause *701 for the forfeiture, and further asserting the court of appeal erred in reviewing the district court’s decision to strike the claim of Tina Beers because the claimants did not appeal that issue. The State additionally argues the district court was correct in striking Tina Beers’ claim and, if it was not, the State should be given the opportunity to present evidence at a full forfeiture hearing to show the money was subject to forfeiture by a preponderance of the evidence. See La. R.S. 40:2612(G).[11] We granted certiorari to review the decision of the court of appeal. 12-0466 (La.06/29/12); 92 So.3d 843.
I «DISCUSSION

I. Standard of Review

Forfeiture proceedings under the Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989 (the Act), La. R.S. 40:2601 et seq., are civil proceedings, generally governed by the Louisiana Code of Civil Procedure. La. R.S. 40:2611(K). We review factual determinations in civil cases under the manifest error standard of review. See, e.g., Detraz v. Lee, 05-1263, p. 7 (La.1/17/07), 950 So.2d 557, 561 (a tort case). Thus, the Louisiana courts of appeal have applied the manifest error standard of review to a trial court’s factual determinations made when considering whether probable cause for forfeiture exists, even though the issue of probable cause is ultimately a legal question. See State v. Bordelon, 11-0413, p. 3 (La.App. 3 Cir. 10/5/11), 74 So.3d 1263, 1265; State v. Bell, 10-0583, p. 4 (La.App. 1 Cir. 10/29/10), 48 So.3d 1253,1255 (citing Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990)); State v. $107,156 U.S. Currency Seized from Marlin Morton, 41,-090, p. 15 (La.App. 2 Cir. 6/30/06), 935 So.2d 827, 836. In Detraz, this Court explained the standard as follows:
Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact’s determination is manifestly erroneous or clearly wrong. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong, even if the reviewing court would have decided the case differently.
Detraz, 05-1263 at 7, 950 So.2d at 561. We review questions of law de novo. See, e.g., Badeaux v. Sw. Computer Bureau, Inc., 05-0612, p. 7 (La.3/17/06), 929 So.2d 1211,1217 (reviewing exception of no cause of action de novo because it h «raised a legal question).
Here, we must determine whether the court of appeal erred in reversing the district court’s finding of probable cause for forfeiture. However, because the evidence to be considered in that determination is *702 affected by whether or not we consider the claims of Tina and Brittany Beers, we first review whether the district court erred in striking their claims.

II. Motion to Strike

According to La. C.C.P. art. 964, “The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand.... ” If an owner or interest holder wishes to file a stipulation of exemption to forfeiture under La. R.S. 40:2609 or a claim against the property under La. R.S. 40:2610, the claimant must submit an affidavit that complies with the requirements of La. R.S. 40:2610. This Court has previously held, “The failure to fulfill any of these requirements ... precludes the owner or interest holder from further participation in the forfeiture proceedings.” State v. 2003 Infiniti G35 VIN NO. JNKCV51E93MO24167, 09-1193, p. 14 (La.1/20/10), 27 So.3d 824, 834. According to La. R.S. 40:2610(B), the affidavits must set forth all of the following:
(1) The caption of the proceedings as set forth on the Notice of Pending Forfeiture or petition and the name of the claimant.
(2) The address where the claimant will accept mail.
(3) The nature and extent of the claimant’s interest in the property.
(4) The date, identity of the transferor, and the circumstances of the claimant’s acquisition of the interest in the property.
(5) The specific provision of this Chapter relied on in asserting that the property is not subject to forfeiture.
(6) All essential facts supporting each assertion.
(7) The specific relief sought.
In its brief to this Court, the State argues Tina Beers did not appeal the district court’s decision to strike her claim. However, the State contends neither of the claimants’ affidavits satisfies the requirements of La. R.S. 40:2610(B) or shows |nthe money was not related to drug activity. The State avers the affidavits do not satisfy La. R.S. 40:2610(B)(4) or B(6) because they do not specify how the money was acquired, nor do they provide facts supporting the assertion that the money was derived from vehicle sales.
In opposition, the claimants argue Brittany Beers adequately asserted a claim for return of the money sufficient to justify a full forfeiture proceeding. The claimants aver the documents attached to Tina’s affidavit indicate the claimants were gainfully employed and engaged in the business of selling vehicles. They contend the district court erred in requiring them to specify the source of each dollar that was seized.
As did the district court, we find both affidavits fail to comply with the requirements of La. R.S. 40:2610. Particularly, we agree the affidavits do not satisfy La. R.S. 40:2610(B)(4), which requires a claimant to specify “[t]he date, identity of the transferor, and the circumstances of the claimant’s acquisition of the interest in the property.” Both affidavits claim the money was accumulated savings, earned in part from the sale of automobiles, as evidenced by attached documentation. However, the affidavits do not provide any details regarding how the claimants acquired the alleged savings.
Brittany did not attach any documentation to her affidavit, despite the reference to documentation made in her affidavit. Tina attached a 2007 W2 form showing earnings of $4,314.50 for the previous year. She also attached tax receipts for six automobiles having a total assessed value of $18,530. We find even if Tina alleged *703 sufficient facts to show the tax receipts were based upon automobile sales yielding 100% profit and her earnings from those sales and other occupation went directly to savings, her explanation for the money would amount to roughly $23,000, despite her claiming 100% ownership of the $144,320 seized from her vehicle. Thus, we find the claims fail to satisfy La. R.S. 40:2610(B)(4). |12We also find the affidavits do not specify “all essential facts supporting each assertion” that the money was exempt from forfeiture as required by La. R.S. 40:2610(B)(6).
Tina Beers did not appeal the district court’s decision to strike her claim and she does not contest that decision before this Court. Accordingly, we find the court of appeal erred in reversing the district court’s decision to strike the claim of Tina Beers. We also find, as did the court of appeal, Brittany Beers failed to show any connection between herself and the money and thus, her claim was properly stricken by the district court.

III. Probable Cause for Forfeiture

We now consider whether the court of appeal was correct in reversing the district court, which found there was probable cause for forfeiture in this case. Although the Act does not explicitly define “probable cause,” the phrase is well defined in the jurisprudence regarding searches and seizures in criminal cases and, for the sake of consistency, that definition should apply here. See La. R.S. 1:3 (“[Words that] have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.”). Furthermore, La. R.S. 40:2606 states, “The sufficiency of the warrant of seizure and affidavit under oath shall be determined in accordance with the law on search warrants.” Therefore, in seeking to define probable cause for forfeiture, we look to the definition of probable cause established by the criminal law jurisprudence.
Whether probable cause exists in a given case is determined by examining the totality of facts and circumstances. See, e.g., State v. Green, 02-1022, p. 8 (La.12/4/02), 831 So.2d 962, 969 (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). This Court recently stated probable cause exists sufficient to issue a search warrant “when the facts and circumstances within the affiant’s knowledge and of which he | ishas reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place tu be searched.” State v. Lee, 05-2098, p. 14 (La.1/16/08), 976 So.2d 109, 122. In the context of warrantless searches and seizures, the Court has defined probable cause as “reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.” State v. Warren, 2005-2248, p. 10 (La.2/22/07), 949 So.2d 1215, 1224 (citing United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990); United States v. Ferguson, 8 F.3d 385, 391-92 (6th Cir.1993)). In the context of an arrest, we have noted, “Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a person of average caution in the belief that the accused has committed an offense.” State v. Wells, 08-2262, p. 8 (La.7/6/10), 45 So.3d 577, 582-83 (internal citations omitted). Similarly, Black’s Law Dictionary defines probable cause as “[a] reasonable ground to suspect that a person has committed or is committing a crime or that a place contains specific items connected with a crime.” Black’s Law DictionaRY (9th ed.2009).
Here, the State is not seeking to show probable cause for a search or arrest, *704 but probable cause for forfeiture of suspected drug-related property under the Act. The Act specifies the conduct that gives rise to forfeiture in La. R.S. 40:2608 and describes the categories of property subject to forfeiture in La. R.S. 40:2604.[12] 1uThis Court in State v. 2003 Infiniti G35 succinctly summarized the conduct and property detailed in La. R.S. 40:2603 and 2604 as “property that is related to, is a proceed from, facilitates, or is itself a violation of the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961-995.” 09-1198 at 5, 27 So.3d at 828. Thus, borrowing from the criminal law definition of probable cause, we hold probable cause for forfeiture is satisfied when the totality of the facts and circumstances provides reasonable ground for believing the property in question is connected to illegal drug trafficking.[13]
The affidavit of State Trooper Mire establishes several facts that, when *705 |ir,viewed together, support a finding of probable cause for forfeiture in this case. One such fact is the manner in which the money was packaged and stored. See, e.g., State v. Small, 00-0564 (La.3/24/00), 762 So.2d 1071 (police officer’s experience showed cellophane packaging was peculiar to drug trafficking and this fact led to finding of probable cause to arrest defendant and seize cellophane bag); State v. Jackson, 263 La. 849, 269 So.2d 465 (1972) (same); see also State v. Isaac, 31,277, pp. 7-8 (La.App. 2 Cir. 12/9/98), 722 So.2d 353, 358 (even though no narcotics or drug paraphernalia were found in defendant’s vehicle, fact that cash stored in vehicle was wrapped in duct tape was a fact considered in finding probable cause to forfeit money). In his affidavit, Trooper Mire testified the money was bundled with rubber bands, sealed in plastic shrink wrapping, and hidden in the vehicle’s floor compartment. He stated based on his experience, such packaging indicates a “substantial connection between the questionable currency and narcotics transactions.” The claimants presented no evidence to contradict these statements made by Trooper Mire in his affidavit.
The drug dog’s alert to the money is also a significant factor in determining whether probable cause for forfeiture exists. We have previously found an alert by a trained drug dog establishes probable cause to search for evidence of drug contraband. See, e.g., State v. Lopez, 00-0562, p. 4 (La.10/30/00), 772 So.2d 90, 93 (citing United States v. Seals, 987 F.2d 1102, 1106-07 (5th Cir.1993)); State v. Cowan, 99-2888, p. 1 (La.6/16/00), 763 So.2d 583, 584; State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396, 397. In this case, Trooper Mire testified a trained drug dog alerted to the money. He further testified in his experience, such an alert indicates narcotic residue was present on the money.
Relying on the reasoning of the court of appeal, the claimants contend the dog’s alert is not reliable evidence of criminal activity because 96% of currency in circulation may contain trace amounts of narcotic residue. United States v. $80,760.00 in U.S. Currency, 781 F.Supp. 462, 475 (N.D.Tex.1991), aff'd 978 F.2d 709 (5th Cir.1992). The claimants, however, did not raise this argument before the district court, and they presented no evidence to support their theory. “The general rule is that appellate courts will not consider issues raised for the first time on appeal.” Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714, 725 (citing Fried v. Bradley, 219 La. 59, 87, 52 So.2d 247, 257 (1950)). Even if the claimants had shown a large percentage of currency in circulation contains trace amounts of narcotic residue, they did not show these trace amounts of narcotics would cause a trained police dog to alert.[14]
Trooper Mire’s affidavit also implies Tina Beers was traveling on a route commonly used to transport drug money. He testified she was driving on Interstate 10 from an area east of St. Martin Parish *706 (North Carolina) to an area west of St. Martin Parish (Houston, Texas), which in his experience is a route typically used to transport money derived from illegal drug transactions. Other factors to consider are Tina Beers’ nervousness upon being stopped and her initial denial of ownership of the money. The claimants contend these facts do not prove the money was drug-related. While these facts alone do not prove the money is drug-related, they may be considered under the totality of circumstances to determine if there was probable cause for forfeiture. The claimants also allege Tina Beers’ initial denial of ownership was due to fear or coercion, but they presented no evidence supporting those allegations before the district court.
In finding no probable cause for forfeiture, the court of appeal relied upon the fact that narcotics were not discovered in Tina Beers’ vehicle and that she was not charged with any crime. The claimants similarly argue there can be no finding |17of probable cause for forfeiture in this case because the State has not shown any specific criminal activity related to the money. However, the Act does not require the State to prove the person from whom the money was seized committed a drug-trafficking crime; it requires proof the seized property was related to drug trafficking. See La. R.S. 40:2608, 2604. As previously stated, we find the State established reasonable ground to believe the money seized in this case is related to drug trafficking, and the claimants failed to establish an exemption under La. R.S. 40:2605. Further, the Act does not require proof of a specific drug transaction. See, e.g., State v. $2,540.00 U.S. Currency Seized from Foster, 47,127, p. 3 (La.App. 2 Cir. 5/16/12), 92 So.3d 1153, 1155 (“It is unnecessary for the State to trace the property to a particular drug transaction— it is the totality of the circumstances that leads to a finding of probable cause”).
Considered individually, the facts set forth in Trooper Mire’s affidavit might not amount to probable cause for forfeiture. However, when viewed together, the totality of circumstances establishes reasonable ground to believe the money is connected to drug trafficking and, therefore, subject to forfeiture under the Act.[15] We consequently find the court of appeal erred in reversing the district court and in finding no probable cause for forfeiture.
CONCLUSION
We find the district court properly struck the claims of Tina and Brittany Beers for failing to satisfy the requirements of La. R.S. 40:2610. In addition, we *707 find the district court did not err in finding probable cause for forfeiture based upon the totality of circumstances established by the state trooper’s affidavit. Because the court of appeal found there was no probable cause for forfeiture and reversed the district court’s ruling that struck Tina Beers’ claim, we reverse the decision of the court of appeal and reinstate the ruling of the district court.
Reversed, Ruling of District Court Reinstated.

. La. R.S. 40:2606(A) states, "Within seventy-two hours, exclusive of holidays or weekends, after actual or constructive seizure, the seizing agency shall apply to the court for a warrant of seizure to hold the property pending forfeiture...."

. La. R.S. 40:2611(C) provides:
If property is seized for forfeiture or a forfeiture lien is filed without a previous judicial determination of probable cause or order of forfeiture or a hearing under the provisions of Section 2613 of this Chapter, the court, on an application filed by an owner of or interest holder in the property, within ten days after notice of its seizure for forfeiture or lien, or actual knowledge of it, whichever is earlier, and after complying with the requirements for claims in Section 2610 of this Chapter, after five days notice to the district attorney, may issue an order to show cause to the seizing agency, for a hearing on the sole issue of whether probable cause for forfeiture of the property then exists. The hearing shall be held within thirty days of the order to show cause unless continued for good cause on motion of either party. If the court finds that there is no probable cause for forfeiture of the property, the property shall be released to the custody of the applicant or from the lien pending the outcome of a judicial proceeding pursuant to this Section.

.La. R.S. 40:2605 provides:
A property interest is exempt from forfeiture under this Chapter if its owner or holder establishes all of the following:
(1) That he is not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur.
(2) That he had not acquired and did not stand to acquire substantial proceeds from the conduct giving rise to its forfeiture other than as an interest holder in bona fide commercial transaction.
(3) That with respect to conveyances for transportation only, he did not hold the property jointly, in common, or in community with a person whose conduct gave rise to its forfeiture.
(4) That he does not hold the property for the benefit of or as an agent for any person whose conduct gave rise to its forfeiture, and, if the owner or interest holder acquired his interest through any such person, the owner or interest holder acquired it as a bona fide purchaser for value not knowingly taking part in an illegal transaction.
(5) That no person whose conduct gave rise to its forfeiture had the authority to convey the interest to a bona fide purchaser for value at the time of the conduct.
(6) That the owner or interest holder acquired the interest after the completion of the conduct giving rise to its forfeiture and that the owner or interest holder acquired the interest under all of the following conditions:
(a) As a bona fide purchaser for value who was not knowingly taking part in an illegal transaction.
(b) Before the filing of a forfeiture lien on it and before the effective date of a Notice of Pending Forfeiture relating to it, and without notice of its seizure for forfeiture under this Chapter.
(c) At the time the interest was acquired, there was no reasonable cause to believe that the property was subject to forfeiture or likely to become subject to forfeiture under this Chapter.

. Five of the receipts bear the same date, April 9, 2008. The other receipt is dated January 16, 2009. Two of the receipts have "sold” handwritten on them — one for $10,000 where the typewritten assessed value of the car was $6,610, and another for $4,000 where the assessed value was $2,260. The receipts do not indicate the type of tax being levied (property or sales) and no other documentation relating to the vehicles was introduced into evidence.

. Specifically, La. R.S. 40:2610(B) provides:
B. The claim shall be in affidavit form, signed by the claimant under oath, and sworn to by the affiant before one who has authority to administer the oath, under penalty of perjury or false swearing and shall set forth all of the following:
*699 (1) The caption of the proceedings as set forth on the Notice of Pending Forfeiture or petition and the name of the claimant.
(2) The address where the claimant will accept mail.
(3) The nature and extent of the claimant’s interest in the property.
(4) The date, identity of the transferor, and the circumstances of the claimant's acquisition of the interest in the property.
(5) The specific provision of this Chapter relied on in asserting that the property is not subject to forfeiture.
(6) All essential facts supporting each assertion.
(7) The specific relief sought.
Affidavits that are styled as stipulations for exemption must also meet the requirements of claims filed under Section 2610 of the Act. See La. R.S. 40:2609.

.According to La. R.S. 40:2615, if no claims are timely filed in an in rem action, the district attorney may apply for an order of forfeiture. "Upon a determination by the court that the district attorney's written application establishes the court’s jurisdiction, the giving of proper notice, and facts sufficient to show probable cause for forfeiture, the court shall order the property forfeited to the state.” La. R.S. 40:2615(A).

. The district court did not otherwise rule on the motions at that time.

. In their brief to this Court, claimants argue the substance of the Notice of Pending Forfeiture was deficient for failing to specify the criminal activity giving rise to forfeiture as required by La. R.S. 40:2608(4). However, that issue was also raised before the court of appeal in Beers I, 09-954 at 3, 29 So.3d at 1267. The court found the issue to be moot because it found "proper notice ... was given to Tina Beers.” 09-954 at 5, 29 So.3d at 1269. Because this Court denied writs on the issue (10-0821, 38 So.3d 324), the arguments concerning the sufficiency of the Notice of Pending Forfeiture are not now before the Court. La. C.C.P. art. 2166(E).

. Before the court of appeal ruled in Beers I, the State filed a Petition for Forfeiture in Rem pursuant to La. R.S. 40:2612. The claimants answered, raising several exceptions and making claims identical to the claims made in their Motion for Probable Cause Hearing. However, at this time, the district court has not considered that petition or the claimants' response to it.

. In a footnote, the court of appeal stated, "recent studies have found that a majority of the currency in circulation contains drug residue.” However, no study was cited, nor did the court indicate a police dog would alert to every trace quantity of drug residue.

. La. R.S. 40:2612(G) provides in pertinent part:
In a forfeiture case wherein no claim is timely filed pursuant to the provisions of this Chapter, the burden of proof to forfeit shall be probable cause. In a forfeiture case, wherein a claim is timely filed pursuant to the provisions of this Chapter, the burden of proof required to forfeit the defendant’s property shall be a preponderance of the evidence.

. La. R.S. 40:2603 provides:
Any of the following conduct gives rise to forfeiture:
(1) An act or omission punishable by confinement for more than one year under R.S. 40:961 et seq. whether or not there is a prosecution or conviction related to the act or omission.
(2) An act or omission occurring outside this state, which would be subject to prosecution in the place of occurrence and would be described in Paragraph (1) of this Section if the act or omission occurred in this state, whether or not it is prosecuted in any state.
(3) Any act or omission committed in furtherance of any violation of R.S. 40:961 et seq. which is punishable by confinement with or without hard labor, including any inchoate or preparatory offense, regardless of whether there is a prosecution or conviction related to the act or omission.
La. R.S. 40:2604 provides:
The following property is subject to seizure and forfeiture as contraband, derivative contraband, or property related to contraband under the provision of Section 4 of Article I of the Constitution of Louisiana:
(1) All controlled substances, raw materials, or controlled substance analogues that have been manufactured, distributed, dispensed, possessed, or acquired in violation of R.S. 40:961 et seq.
(2) All property that is either:
(a) Furnished or intended to be furnished by any person in exchange for a controlled substance in violation of R.S. 40:961 et seq.
(b) Used or intended to be used in any manner to facilitate conduct giving rise to forfeiture, provided that a conveyance subject to forfeiture solely in connection with conduct in violation of R.S. 40:961 et seq. may be forfeited only pursuant to the provisions of this Chapter.
(3) Proceeds of any conduct giving rise to forfeiture.
(4) All weapons possessed, used, or available for use in any manner to facilitate conduct giving rise to forfeiture.
(5) Any interest or security in, claim against, or property or contractual right of any kind affording a source of control over any enterprise that a person has established, operated, controlled, conducted, or participated in the conduct of through conduct giving rise to forfeiture.

. This definition of probable cause for forfeiture is similar to the definition the courts of appeal have adopted from federal jurisprudence. For example, the Louisiana Second Circuit Court of Appeal has defined probable cause in the forfeiture context as follows:
[Probable cause is defined as] a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion. It may be established by demonstrating ‘by some credible evidence, the probability that the money was in fact drug related. Probable cause can be established by circumstantial evidence or evidence that would be inadmissible at trial, so long as the evidence is reliable.... the United States Fifth Circuit Court of Appeal has recognized that as to the issue of the con-nexity of the property to the crime, the government’s burden requires "probable cause for belief that a substantial connection exists.
State v. $2,540.00 U.S. Currency Seized from Foster, 47,127, p. 3 (La.App. 2 Cir. 5/16/12), 92 So.3d 1153, 1155 (citing State v. Giles, 26,695 (La.App. 2 Cir. 06/18/97), 697 So.2d 699); United States v. One 1987 Mercedes 560 SEL, 919 F.2d 327 (5th Cir.1990); see also, *705 e.g.. State v. Bordelon, 11-0413 (La.App. 3 Cir. 10/5/11), 74 So.3d 1263; State v. Bell, 10-0583 (La.App. 1 Cir. 10/29/10), 48 So.3d 1253.

. Courts in some jurisdictions have found police dog alerts to be reliable evidence, even if a high percentage of currency is tainted with narcotic residue. See, e.g., United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00), 403 F.3d 448 (7th Cir.2005) (based upon evidence presented, finding police dogs do not alert to cocaine on currency, but a byproduct of cocaine, methyl benzoate, which evaporates rapidly); see also United States v. $141,700.00 in U.S. Currency, 157 F.3d 600, 606 (8th Cir.1998).

. Although not authoritative for our determination of probable cause, we find persuasive several federal cases that likewise resulted in a finding of probable cause for forfeiture. See, e.g., United States v. Three Hundred Sixty-Nine Thousand Nine Hundred Eighty Dollars ($369,980) in United States Cwrency, 214 Fed.Appx. 432 (5th Cir.2007) (finding probable cause based upon the route of travel, the large sum of money, the unique packaging of the money, a drug dog alerting to the money, and inconsistent stories used to explain the source of the money); United States v. Mondragon, 313 F.3d 862 (4th Cir.2002) (government’s petition sufficiently plead probable cause for forfeiture because of a dog alert to a large sum of money that was unusually packaged and stored in a hidden compartment); United States v. U.S. $42,500.00, 283 F.3d 977 (9th Cir.2002) (finding probable cause based upon large amount of cash that was wrapped in cellophane to which drug dog alerted); United States v. $141,770.00 in U.S. Currency, 157 F.3d 600 (8th Cir.1998) (finding probable cause based upon a large amount of cash that was stored in a hidden compartment with fabric softener sheets to dispel the smell of narcotics and a drug dog alerting to the evidence); but see United States v. $5,000 in U.S. Currency, 40 F.3d 846 (6th Cir.1994) (reversing summary judgment because appellate court found large amount of money upon which drug dog alerted was not sufficient to establish probable cause).